UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Case No.  06-92-04 (TFH) |
| | : | |
| MARLON CHRISTOPHER DAVID, | : | |
| Defendant. | : | Hearing Date: April 13, 2007 |

**GOVERNMENT'S MOTION FOR PRETRIAL DETENTION ORDER**

*COMES NOW*, the United States of America, by and through its Attorney, the United States Attorney for the District of Columbia, by this motion to respectfully request pretrial detention for Defendant David in this case.  In support of this motion, we submit as follows:  The record shows that no condition nor combination of conditions for Defendant's release will reasonably assure the safety of the community.  Reform Act, 18 U.S.C. § 3142(f)(1)©[1]  That law presumes that persons should be jailed pending trial when charged with the crimes for which Defendants have been indicted.  The Defendant has been previously convicted , served a sentence and is now subject to deportation as a result of his conviction in a criminal case, Criminal No. 92-269, Unlawful PWID Cocaine Within 1000 Feet of a Public School.  Additionally, Defendant has been previously convicted of Operating a Vehicle After Suspension in 1992 and Attempted Possession of Cocaine in 1988.  Therefore,  the Defendant presents a danger to the community because has the ability to

---

[1] 18 U.S.C. § 3142(f)(1)(C), authorizes pre-trial detention in any case involving a crime under the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, carrying a maximum penalty of ten years or more in prison.  All of the crimes charged in Defendant David's indictment carry such penalties.

traffic large amounts of narcotics via the telephone and distribute narcotics from secure and secreted locations which required substantial law enforcement efforts to uncover.

Statement of Fact

Defendant Marlon Christopher David, and several associates, both known and unknown, to the United States, have conspired to distribute and possess with intent to distribute Cocaine Base, also known as "Crack" a controlled substance, in violation of Title 21 United States Code §§ 841(a)(1) and 846. This conspiracy has venue and jurisdiction in the District of Columbia. The substances seized and distributed during this investigation were analyzed by the Drug Enforcement Administration Laboratory and were determined to in fact be Cocaine Base, also known as "Crack" a controlled substance. The Cocaine Base or Crack utilized during the charged conspiracy was could be smoked and ingested by various methods to cause a narcotic or drugged effect. Defendant David conspired with various individuals, both known and unknown to the United States to include, but not limited to: Raymond Cooke, Niel Eugine Thomas, also known as Neil Eugene Thompson, and Tammy Odom. Defendant David is charged in Counts 1, 7, 11 and 12 of his indictment. Between May 7, 2004 and March 14, 2006, Defendant Odom distributed to undercover officers cocaine base also known as crack on ten different occasions ranging in amounts from approximately 23 grams for $1,200.00, in U.S. Currency to 130 grams for $4,000.00, in U.S. currency. Defendant Odom, who was the intermediary for her suppliers, would call individuals like Defendants Cooke and Thomas aka Thompson, who was supplied by Defendant David to obtain the crack cocaine and then she would sell it to the undercover officers with the bulk of the illicit profits or monies going to persons like Defendants Cooke, Thomas aka Thompson and Defendant David. In total, the United States purchased 669 grams of crack cocaine from Defendant Odom at a cost of $21,400.00, in U.S.

currency. During the course of this conspiracy Defendant Odom obtained from Defendants Cooke, Thomas aka Thompson and David, Cocaine Base or Crack in amounts ranging from an eight-ball or 2.5 grams to a 62 or 62 grams of Cocaine Base or Crack, or more, in total amount which was more than 669 grams. The substances purchased from Defendant Odom during this investigation were analyzed by the Drug Enforcement Administration Laboratory and were determined to in fact be Cocaine Base, also known as "Crack" a controlled substance.

## ARGUMENT

Congress clearly expressed it's intent when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those Defendants who pose an especially grave risk to the safety of the community. . . . ***This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.***

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S.Code Cong. & Ad.News 3182, 3486-3487. (Emphasis added.)[2]

---

[2] Regardless of why the government sought a detention hearing, the Court always must consider whether Defendant's release is a danger to the community. This point is made throughout the Bail Reform Act. Section 3142(e), which authorizes detention without bail pending trial, states:

> If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required ***and the safety of any other person and the community***, such judicial officer ***shall order*** the detention of the person before trial.

Emphasis added. Similarly, § 3142(f) states:

No condition of release or combination of them can ensure that Defendants will not pose a danger to the community if released. This is based first upon the presumption to that effect written into the Bail Reform Act. 18 U.S.C. § 3142(e) ("Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions of release will reasonably assure the . . . safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act."). This presumption, triggered by Defendants' indictment, is re-enforced overwhelmingly by the facts of their case.

Similarly, § 3142(f) states:

> The judicial officer shall hold a hearing to determine whether any condition of combination of conditions set forth in subsection © of this section will reasonably assure the appearance of such person *and the safety of any other person and the community* –

---

The judicial officer shall hold a hearing to determine whether any condition of combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person *and the safety of any other person and the community* –

  (1) upon motion of the attorney for the Government, in a case that involves,

    (C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq*.) . . .

Emphasis added. This point is again made in § 3142(g), **Factors to be considered**, which states:

The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required *and the safety of any other person and the community*, take into account the available information concerning –

  (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
  (2) the weight of the evidence against the person;
  (3) the history and characteristics of the person . . .
  (4) *the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .*
(Emphasis added.)

>> (1) upon motion of the attorney for the Government, in a case that involves,
>>> (A) a crime of violence . . .
>> (2) Upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves –
>>> (A) a serious risk that such person will flee . . . .

Emphasis added.

This point is again made in § 3142(f), **Factors to be considered**, which states:

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required *and the safety of any other person and the community*, take into account the available information concerning –
>
>> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>>
>> (2) the weight of the evidence against the person;
>>
>> (3) the history and characteristics of the person . . .
>>
>> (4) *the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .*

(Emphasis added.) Thus, at all times, the issue of Defendant's danger to the community if released should be at the forefront of the Court's thinking when ruling on pre-trial detention.

A. *Defendant is in the drug trade, and is a threat to return to it if released*:

The facts of this case demonstrates the danger that Defendant's release poses. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the Defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern

>about safety be given a broader construction than merely danger of harm involving violence. . . . The Committee also emphasizes that the risk that a Defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community.

S.Rep. No. 225, *supra*, at 3195-3196.

*B. Defendant's crimes implicate both danger to the community and the risk of flight*:

Defendant David's crimes directly implicates both the risk of danger to the community and of flight. The rationale for detaining an individual is the fear that he will not obey an order to return to court or to obey the law. The release of any defendant must, therefore, be predicated on the Court's belief that its order will be obeyed. A potent sign that Defendant David cannot be trusted to obey any order of the court, including an order to return to court when required. "As in any human endeavor, what is past is prologue and there can be no better evidence bearing on whether the Defendant will appear when required than whether he has appeared when required in the past *and has been faithful to the conditions of his conditional release, probation, or parole*." United States v. Battle, 59 F.Supp.2d 17, 20 (D.D.C. 1999) (emphasis added), Facciola, MJ., citing United States v. Robinson, 27 F.Supp.2d 1116 (S.D.Ind. 1998) "[A]scertaining whether a defendant presents a serious risk of flight requires inquiry into his behavior when released previously on conditional release, probation, or parole." United States v. Battle, supra, id. Consequently, release of Defendant David raises an exceptionally severe risk of danger and flight. Every time he distributed and possessed crack to be distributed, he essentially was thumbing his nose at the Judge in the District Court case and the Immigration and Custom Service in the face of his pending deportation proceedings, to whom he gave a solemn oath that he would commit no crime while released. The Government submits that Defendant David's overall picture is of a person who calculatedly,

persistently, and flagrantly breaking his bail, his word to the Court, and the criminal law. Defendant David must be deemed to give no more thought to the value of his oath to the Court than to the consequences of his illegal narcotic trafficking for the drug-addled addicts, like himself, upon whom his crimes prey.

Defendant David's release is equally fraught with peril to the community. In virtually each instance he utilized telephones, stealth, cover and concealment, and insulated himself with go-betweens to sell his crack. Indeed, Defendant David has shown plainly that he will do what he will to this community. And, in this case, it is not just the community at large, nor some remote place, but the very neighborhood closest to him. Against these facts, Defendant David principally relies for his release on community ties to overcome the presumption that he should be held pending trial. Again, the framers of the 1984 Bail Reform Act thought differently. "The Committee also notes with respect to the fact of community ties that it is aware of the growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community." S.Rep. No. 225, supra, 3207. Nor is it clear why community ties, which have not stopped Defendant David, from selling drugs as described above, now will keep them from doing so again.

In summary, Defendant David's release would constitute a clear and convincing danger to the community. Additionally, we believe that it is not within the interests of justice for the United States to potentially allow a foreign jurisdiction to obtain control of Defendant David and thereby potentially allow for a defacto severance of Defendants due to Defendant David's pendant deportation out of the country by the Immigration and Customs Enforcement Agency.

The Bail Reform Act of 1984, 18 U.S.C. sec. 3141 et seq. (Hereinafter "the Act"), provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions [of release] will reasonable assure . . . the safety of any other person and the community, such judicial officer shall order the detention of the [Defendant] before trial." 18 U.S.C. sec. 3142(e). Thus, danger to the community alone is a sufficient basis upon which to order pretrial detention. United States v. Salerno, 481 U.S. 739, 755 (1987); United States v. Simpkins, 826 F.2d 94, 98 (D.C. Cir. 1987). We submit, that Defendant David also represents a risk of flight too based on his pending Immigration cases and the substantial penalty of incarceration in this case. United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985). Accordingly, based on the clandestine nature of Defendant David's substantial and long standing crimes we conclude and urge this Court to find that Defendant David should held without bond in this case, not sole based on the Immigration detainer lodged against him, but because of the requirement of the Bail Reform Act and his criminal history and present criminal conduct.

**WHEREFORE**, the United States respectfully prays this Honorable Court to order Defendant David held without bail pending trial..

    Respectfully submitted,

    JEFFERY A. TAYLOR
    UNITED STATES ATTORNEY
    D.C. BAR NO. 498-610


By: _____
    MARTIN DEE CARPENTER
    Assistant United States Attorney
    Organized Crime and Narcotics Trafficking Section

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a copy of this pleading has been mailed, postage prepaid, this 29th day of March, 2007, to counsel for Defendant David, Eduardo Balarezo, Esquire, by electronic filing to:

Attorney Eduardo Balarezo
Email: lawoffice@blalrezo.net

Attorney Brian K. McDaniel
Email:  kbmassociates@aol.com

Attorney Marie Elise Haldane
Email: ehaldane@msn.com

Attorney James W. Rudasill, Jr.
Email:  rudasilljr7@aol.com

 

_____
MARTIN DEE CARPENTER, Bar No. 431-211
Assistant United States Attorney
Organized Crime & Narcotics Trafficking Section
555 4th Street, N.W., Room No. 4116
Washington, D.C.  20530
(202) 514-7063

Email: martin.carpenter2@usdoj.gov