UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Case No. 06-92-04(THF) |
| | : | |
| MARION CHRISTOPHER DAVID, | : | |
| Defendant. | : | Hearing Date: Not Yet Set |

### Government'S OMNIBUS OPPOSITION TO DEFENDANT'S MOTIONS

*COMES NOW*, the United States of America, by and through its Attorney, the United States Attorney for the District of Columbia, to respectfully oppose Defendant Marlon David's motions to oppose the Government's use of F.R.E. Rule 404(b) evidence, to oppose the Government's use of F.R.E. Rule 609 evidence, to suppress his statements, to suppress his identification, motion for pretrial discovery of co-defendants and co-conspirators statements, to dismiss the superseding indictment and its alternative for a bill of particulars, pretrial determination of the conspiracy and the admissibility of co-conspirator's statements, pretrial disclosure of confidential informants' statements and identities; and, in support thereof, we submit as follows:

### BACKGROUND

### Statement of Fact

Defendant Cathy Odom, also known as Tammy Odom, and several associates, both known and unknown, to the United States, have conspired to distribute and possess with intent to distribute Cocaine Base, also known as "Crack" a controlled substance, in violation of Title 21 United States Code §§ 841(a)(1) and 846. This conspiracy has venue and jurisdiction in the District of Columbia. The substances seized and distributed during this investigation were analyzed by the Drug

Enforcement Administration Laboratory and were determined to in fact be Cocaine Base, also known as "Crack" a controlled substance. The Cocaine Base or Crack utilized during the charged conspiracy was could be smoked and ingested by various methods to cause a narcotic or drugged effect. Defendant Odom conspired with various individuals, both known and unknown to the United States to include, but not limited to: Raymond Cooke, Niel Eugine Thomas, also known as Neil Eugene Thompson, and Marion Christopher David. Between May 7, 2004 and March 14, 2006, Defendant Odom distributed to undercover officers cocaine base also known as crack on ten different occasions ranging in amounts from approximately 23 grams for $1,200.00, in U.S. Currency to 130 grams for $4,000.00, in U.S. currency.

Defendant Odom, who was the intermediary for her suppliers, would call individuals like Defendants Cooke, David and Thomas aka Thompson to obtain the crack cocaine and then she would sell it to the undercover officers with the bulk of the illicit profits or monies going to persons like Defendants Cooke, David and Thomas aka Thompson. In total, the United States purchased 669 grams of crack cocaine from Defendant Odom at a cost of $21,400.00, in U.S. currency. During the course of this conspiracy law enforcement officers obtained or seized from the defendants of this conspiracy Cocaine Base or Crack in amounts ranging from an eight-ball or 2.5 grams to a 62 or 62 grams of Cocaine Base or Crack, in total amount which was more than 669 grams. The substances seized or purchased during this investigation were analyzed by the Drug Enforcement Administration Laboratory and were determined to in fact be Cocaine Base, also known as "Crack" a controlled substance. During the course of this conspiracy, all the cocaine base aka crack was obtained in the area of the 1200 Block of Delafield Place, Northwest, Washington, D.C..

On January 23, 2007, the police arrested Defendant David, during routine processing the police advised him of his rights and allowed him to execute a written rights waiver. Pursuant to questioning Defendant David admitted that on January 18, 2006, in the area of the 1200 Block of Delafield Place, Northwest, Washington, D.C., that he knew his codefendant and that he had driven him to a cocaine base aka crack transaction and dropped him off to complete the deal. Defendant David was video tapped and fully observed operating his vehicle which was registered to him. Accordingly, no identification procedure was requested. Later, on February 7, 2006, Defendant David's co-conspirator was arrested for PWID with cocaine base aka crack and marijuana supplied to him by Defendant David.

### Rule 404(b) Evidence

On June 27, 1992, at approximately 1:17 p.m., U.S. Park Police Officers who were on routine patrol in a marked cruiser near Georgia Avenue and Peabody Street, N.W. Washington, D.C., observed defendant David driving a Nissan 300ZX automobile, bearing North Carolina tags, which did not bear a valid inspection sticker. The car also had a bullet hole on the passengers side of the vehicle. Defendant David could not produce a valid driver's license or registration and then he lied about his true name, age and date of birth. The police discovered numerous ziplocks of cocaine base aka crack in plain view, approximately 20 grams. Defendant David was arrested wherein this offense occurred within 1000 feet of a catholic school. After his arrest, post rights, the police seized $300.00, in U.S. currency, Defendant also signed a written confession to these charges.

At this time, Defendant David was on release on superior Court felony drug case, F-11721-91, wherein on October 2, 1991, at 9th Street and Crittenden Street, N.W., Washington, D.C., Defendant David was again driving a vehicle when he was stopped for making an illegal left turn.

A passenger in the vehicle made several furtive gestures which resulted in Defendant David's arrest and the seizure of approximately 20 grams of cocaine base aka crack and marijuana. Yet, and, still, in another Superior Court case Defendant David was convicted of attempted possession of cocaine which was a charging and plea break down of PWID cocaine.

## ARGUMENT

**Defendant David's Mirandized Statements are Admissible**

In this case, Defendant David's statements made to the police while in custody where made in accordance with the law of Miranda v. Arizona, 384 U.S. 436 (1966). After having waived his Miranda rights in writing, the defense contends that such a waiver, if it occurred, was not knowing and voluntary. When the validity of a waiver of Miranda rights is challenged, the Government is required to prove that the waiver was voluntary by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168 (1986). Although the validity of the waiver is to be determined on a case-by-case basis by examining the totality of the circumstances, North Carolina v. Butler, 441 U.S. 369, 374-375 (1979); United States v. McNeil, 433 F.2d 1109, 1112 (D.C. Cir. 1969), "[a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of the waiver...." Butler, 441 U.S. at 374-375. Here, the evidence will show that the defendant signed an express written waiver of his Miranda rights, prior to being questioned. "The administration of proper Miranda warnings, followed by a written waiver of the rights described in those warnings, will usually go far toward demonstrating that a decision to speak is not compelled. If the written waiver is promptly followed by an actual confession, the likelihood that the waiver was valid is often further enhanced." United States v. Yunis, 859 F.2d 953, 961 (D.C. Cir. 1988) (citations omitted).

Moreover, in order to show that a waiver of <u>Miranda</u> rights was involuntary, there must be some evidence of Governmental coercion.

> The sole concern of the Fifth Amendment, on which <u>Miranda</u>, is based, is Governmental coercion. Indeed, the Fifth Amendment privilege is not concerned "with moral and psychological pressures to confess emanating from other than official sources. The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on "free choice" in any broader sense of the word.

<u>Connelly</u>, 479 U.S. at 170 (<u>quoting</u> <u>Oregon v. Elstad</u>, 470 U.S. 298, 305 (1985). Here, there are no allegations of Governmental overreaching that would provide the basis for suppression.

A statement is voluntary for purpose of due process so long as the statements are "the product of an essentially free and unconstrained choice by its maker." <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 225-26 (1973) (<u>citing</u> <u>Columbe v. Connecticut</u>, 367 U.S. 568, 602 (1961)). "Absent police conduct casually related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." <u>Connelly</u>, 479 U.S. at 163-64. There is no indication of such conduct in this case. Moreover, even if there were, there is no indication in this case that under the totality of the circumstances, <u>Lego v. Twomey</u>, 404 U.S. 477, 489 (1972) (Government has burden of establishing under preponderance of the circumstances that the confession was voluntary), defendant's will was overborne. <u>See</u> <u>Rogers v. Richmond</u>, 365 U.S. 534, 544 (1961) (Government conduct must be "such as to overbear [a suspect's] will to resist and bring about confessions not freely self-determined").

To determine whether a statement is voluntarily made, the court must examine the totality of the circumstances to determine whether an individual's "will has been overborne and his capacity for self-determination been critically impaired." <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 225

(1973); Harris v. Dugger, 874 F.2d 756, 759-62 (11th Cir.), cert. denied, 493 U.S. 1011 (1989) (confession voluntary even though defendant in forearm cast and handcuffed during six-hour interrogation); United States v. Leon Guerrero, 847 F.2d 1363 (9th Cir. 1988) (promises that cooperation would be communicated prosecutors insufficient to overcome will); United States v. Yunis, 859 F.2d 953, 961 (1988) (defendant's seasickness, his uncomfortably hot room, and his unfamiliarity with American legal culture not a legally adequate basis for concluding that confession was involuntary); United States v. Pelton, 835 F.2d 1067 (4th Cir. 1987), cert. denied, 486 U.S. 1010 (1988) (FBI agent's assertion that would launch full-scale investigation if defendant did not cooperate not sufficient to render statements involuntary). Testimony at a pre-trial hearing in this case would demonstrate that the statement made by the defendant was voluntary.

Clearly here, where defendant is a mature man who has sufficient familiarity with the criminal justice system, based on his numerous prior charges and prior criminal convictions, he clearly understood her rights. There is no basis for the suppression of defendant's statements.

**Motion for Early Discovery/Disclosure Witness/Co-Defendants-Conspirators Statements**

The defendants in this case have been indicted on criminal charges in connection with the distribution of cocaine base and cocaine base offenses in the District of Columbia. The defendant has filed a motion asking the Court to compel the Government to disclose to defense counsel the name of the witnesses who dealt with the defendant and make him available for an interview.

In assessing the defendant's claim the Government suggests that it is first necessary to address what the Government has provided to the defendant concerning these witnesses. At a very early date following the return of the first Indictment in this case we provided the defendant with copies of audio and video tapes relating to the events charged (and uncharged) in the Superseding Indictment.

Rule 16(a)(2) of the Federal Rules of Criminal Procedure specifically excludes from pretrial discovery:

> (1) reports, memoranda, or other internal Government documents made by the attorney for the Government or other Government agents in connection with the investigation or prosecution of the case, and
>
> (2) statements made by Government witnesses except as provided by the Jencks Act (18 U.S.C. s 3500).

Thus, written or oral statements of witnesses, including cooperating witnesses, are not discoverable under Rule 16.  United States v. Fearn, 589 F.2d 1316 (7th Cir. 1978), United States v. Cook; 530 F.2d 145 (7th Cir. 1976), cert. denied, 426 U.S. 909 (1977).  Rule 16(b)(2) provides similar protection to defense witnesses and Rule 16(a)(3) extends similar protection to statements made before the grand jury except as provided in Rules 6, 12(I) and 16(a)(1)(A) of the Federal Rules of Criminal Procedure.

Rule 16 does not mandate the disclosure of the names of witnesses who are not experts. Weatherford v. Bursey, 429 U.S. 545 (1977); United States v. Bello-Perez, 977 F.2d 664 (1st Cir. 1992); United States v. Reis, 788 F.2d 54 (1st Cir. 1986); United States v. Colson, 662 F.2d 1389 (11th cir. 1981); United States v. Sukumolachen, 610 F.2d 685 (9th Cir. 1980); United States v. Patton, 578 F.2d 701 (8th Cir.), cert. denied, 439 U.S. 964 (1978); United States v. Bolden, 514 F.2d 1301 (D.C. Cir. 1975); United States v. Baca, 494 F.2d 424 (10th Cir. 1974), United States v. Anderson, 481 F.2d 685 (4th Cir. 1973); United States v. Hancock, 441 F.2d 1285 (5th Cir.), cert. denied, 404 U.S. 833 (1971); United States v. Persico, 425 F.2d 1375 (2d Cir.), cert. denied, 400 U.S. 869 (1970); United States v. Conder, 423 F.2d 904 (6th Cir.), cert. denied, 400 U.S. 958 (1970).

Indeed, attempts to amend Rule 16 to compel the disclosure of the names of prospective witnesses by either side have been rejected by Congress. H.R. Conf. Rep. No. 414, 94th Cong., 1st Sess. 12 (1975). The conference report accompanying the 1975 amendments to the Rules of Criminal Procedure notes:

> A majority of the Conferees believe it is not in the interest of the effective administration of criminal justice to require that the Government or the defendant be forced to reveal the names and addresses of its witnesses before trial. Discouragement of witnesses and improper contacts directed at influencing their testimony, were deemed paramount concerns in the formation of this policy.

Senator McClellan, in his remarks on the Senate floor regarding the 1975 amendments to the Federal Rules of Criminal Procedure explained that:

> The exposure of witnesses to intimidation and reprisals, moreover, has another aspect in terms of its predictably chilling effect on the willingness of people to come forward and testify in serious felony cases. Obtaining the public's cooperation with law enforcement is a serious problem. Anyone who has been a witness knows that it is a real sacrifice and often a terrifying experience to cooperate and testify in our criminal system, although it is a burden many witnesses are more than willing to assume. The problem is particularly acute in the Federal Government's more important cases which involve prosecution in organized crime and vice, political corruption, narcotics pushing, and large-scale criminal enterprises. These are areas in which the Federal Government has taken on a singular responsibility for law enforcement.

Cong. Rec., S12876-12879 (July 1, 1975).

While Rule 16 does not compel disclosure of the identities of Government witnesses, the Supreme Court in Roviaro v. United States, 353 U.S. 53 (1957), and its progeny made it clear that a defendant is not necessarily precluded from obtaining this information. In Roviaro the defendant sought the identity of a Government informant who was an active participant in the narcotics transaction for which the defendant was tried and convicted. The Government resisted the disclosure of the informant's identity, relying on the informant's privilege recognized by the Court in Scher v.

United States, 305 U.S. 251 (1938). The Supreme Court held that fundamental fairness required that the informer's privilege give way when the informant's testimony or identity is relevant to the defense or essential to a fair determination of the cause. Roviaro, 353 U.S. at 60-61.

But in Roviaro the Government was seeking to protect, by the informant privilege, the identity of an individual who was a direct witness to the charged events, and whom the Government had no intention of calling as a witness. In the instant case, the defendant is seeking the name of a person the Government has always intended to call as a witness. We sought and obtained the indictment of a distribution of heroin to that cooperating witness. The Government's position here is totally inapposite to that addressed by the Court in Roviaro. Rather, defendant here seeks to discover the Government's witnesses, that is, a person the Government intends to call in the proof of its case. To the extent that it exists and that the defendant is entitled, the Government will provide to the defendant any information about the confidential cooperating witness for impeachment required under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972), at the same time it discloses Jencks material, so that the defendant will have any such information to use during cross-examination. Finally, the confidential cooperating witness is expected to provide inculpatory evidence regarding the defendant, not exculpatory.

While the disclosure of the identity of the Government's witnesses is within the discretion of the Court, this Circuit has set a high standard which the defense must meet to compel discovery of Government informants. United States v. Warren, 42 F.3d 647, 654-55 (D.C. Cir. 1994); United States v. Skeens, 449 F.2d 1066, 1070 (D.C. Cir. 1971); United States v. Harflinger, 436 F.2d 928 (8th Cir. 1970), cert. denied, 402 U.S. 973 (1971). It is incumbent upon the defendant to establish that the identity of a witness is necessary to his defense. See United States v. Khosravi, 733 F. Supp.

137, 138 (D.D.C. 1990) (defendant charged with narcotics conspiracy not entitled to the identity of an informant who arranged the meeting between defendant, undercover agent and co-conspirator). In order to justify the disclosure of the informants' identities in this case, the defendant must make a particularized showing that such a disclosure is both material to the preparation of his defense and reasonable in light of the circumstances. The defendant has failed to establish a sufficient need for the disclosure of witness's identity. United States v. Sclamo, 578 F.2d 888, 889 (1st Cir. 1978). The defendant's claim for disclosure is based upon "'mere speculation that the informer might possibly be of some assistance is not sufficient to meet [defendant's] burden.'" United States v. Edelin, 128 F.Supp.2d 23, 34 (D.D.C. 2001) (quoting United States v. Mangum, 100 F.3d 164, 172 (D.C. Cir.1996)).

     Furthermore, one of the most relevant factors to be considered by the Court is the risk disclosure may pose to the witnesses. United States v. Cannone, 528 F.2d 296, 301 (2d Cir. 1975); Edelin, 128 F.Supp. at 33. This Court is well-aware of the increase in witness intimidation and direct actions taken to kill or harm witnesses in similar cases involving the sale of drugs. In the absence of any countervailing "particularized need" on the part of the defendant, the identity of the cooperating witness should be treated as that of every other Government witness and should not be disclosed.

**The Court Need Not Hold a Pre-trial Hearing on the Admissibility of Co-Conspirator's Statements, to Determine the Existence of a Conspiracy, Dismiss the Indictment or Supply a Bill of Particulars.**

     Defendant David moves the Court for a pre-trial hearing on the admissibility of co-conspirator's statements to decide the existence of a conspiracy and the admissibility of each statement, dismissal of the conspiracy and a bill of particulars. However, the law on admitting co-

conspirator statements supports this District's practice of admitting the co-conspirator's statements subject to connection in the trial. Additionally, a determination regarding admissibility is ultimately a trial ruling. Given the absence of any reason calling such practice into question, the Court should deny the request for a hearing, and admit the statements subject to connection as well as a determination of admissibility at trial.

Federal Rule of Evidence 801(d)(2)(E) provides that statements of co-conspirators made in furtherance of the conspiracy are not hearsay. A statement made by a co-conspirator which is also made in furtherance of the conspiracy is admissible against each conspirator. United States v. Jackson, 627 F.2d 1198, 1216 (D.C. Cir. 1980). To admit such statements, the Government need only prove by a preponderance of the evidence that a conspiracy existed between the defendant and the declarant and that the statement was made in furtherance of the conspiracy. United States v. Beckham, 968 F.2d 47, 51-52 (D.C. Cir. 1992) (citing Bourjaily v. United States, 483 U.S. 171, 175 (1987). The statement may be considered by the court in finding that a conspiracy existed as long as there is also some independent evidence of the conspiracy as well. United States v. Beckham, 968 F.2d at 50-51 (citing Bourjaily v. United States, 483 U.S. at 181).

There is no requirement, however, that the Government prove the preliminary facts of the conspiracy prior to the disclosure of a co-conspirator's statement at trial. Courts have long admitted such statements on a conditional basis subject to proof of the conspiracy later during the trial:

> As a practical matter, to avoid what otherwise would become a separate trial on the issue of admissibility, the court may admit declarations of co-conspirators "subject to connection." If substantial evidence of the connection has not been produced at the close of the Government's case, the court will instruct the jury to disregard the hearsay statements; or the court may grant a mistrial.

United States v. Gantt, 617 F.2d 831, 845 (D.C. Cir. 1980); see United States v. Jackson, 627 F.2d at 1218 (trial courts are not required to hold "mini-trials" on the conspiracy issue before the conditional admission of a co-conspirator's statement); see United States v. Monaco, 702 F.2d 860, 877 n.29 (11th Cir. 1983) (Court may admit statements subject to the Governments "connecting them up"); United States v. Graham, 548 F.2d 1302, 1308-1309 (9th Cir. 1977) (requiring proof of conspiracy first would compel fragmented presentation of evidence); United States v. Jones, 542 F.2d 186 (4th Cir. 1976); United States v. Katz, 535 F.2d 593, 597 (10th Cir. 1976); United States v. Trotter, 529 F.2d 806, 811-813 (3rd Cir. 1976). Rule 104(b) of the Federal Rules of Evidence codifies this commonly used judicial practice.

The conspiracy "mini-trial" requested by defendants is not only unnecessary, it would also significantly prolong the proceedings as a whole, since a pretrial ruling of admissibility would eventually have to be revisited at trial. See, e.g., United States v. Pepe, 747 F.2d 632, 653 (11th Cir.1984) (pretrial ruling in a conspiracy case "is not dispositive on the issue of hearsay, however, because the admissibility of testimony is, ultimately, a trial ruling"). The scheduling of such a pretrialhearing in the case would accomplish nothing more than a complete and necessarily very lengthy preview of the Government's case against each of the remaining defendants. See United States v. Ianniello, 621 F. Supp. 1455, 1478 (S.D.N.Y. 1985).

The Government submits that there will be ample evidence at trial to connect co-conspirator statements to the conspiracy with which the defendants are charged. The Government intends to introduce substantial evidence of the conspiracy. That evidence includes, inter alia, eyewitness testimony and recorded telephone conversations among co-conspirators. This testimony along with these recordings will show meetings, actions, association, and jointly undertaken conduct which

demonstrates that each defendant was acting in pursuit of a common design and a common goal. Consequently, the Court will not be placed in the position of ruling upon the existence of a conspiracy solely upon reference to a single unsupported co-conspirator declaration. The Government therefor submits that an evidentiary pretrial hearing is unnecessary under the Gantt decision's "subject to connection" rule.

Moreover, the admission of tape recordings falls within the sound discretion of the trial court. United States v. White, 116 F.3d 903, 920 (D.C. Cir.), cert. denied 118 S.Ct. 390 (1997). Prior to introducing any tape recording at trial, the Government will proffer testimony as to the recording's authenticity. Such testimony will establish that tapes are "authentic, accurate and trustworthy" before they are played at trial. United States v. Slade, 627 F.2d 293, 301 (D.C. Cir.), cert. denied sub nom. Johnson v. United States, 449 U.S. 1034 (1980). See United States v. Haldeman, 559 F.2d 31, 107 (D.C. Cir. 1976). There is no need to do this pretrial.

Accordingly, Defendant David's motions to oppose the Government's use of F.R.E. Rule 404(b) evidence, to oppose the Government's use of F.R.E. Rule 609 evidence, to suppress his statements, to suppress his identification, motion for pretrial discovery of co-defendants and co-conspirators statements, to dismiss the superseding indictment and its alternative for a bill of particulars, pretrial determination of the conspiracy and the admissibility of co-conspirator's statements, pretrial disclosure of confidential informants' statements and identities should all be denied.

WHEREFORE, the Government respectfully requests that all of the defendants' motions be denied.

          Respectfully submitted,

          JEFFERY A. TAYLOR
          UNITED STATES ATTORNEY
          D.C. BAR NO. 498-610


By: _____
          MARTIN DEE CARPENTER
          D.C. Bar. No. 431-211
          Assistant United States Attorney
          Organized Crime and Narcotics Trafficking Section
          Room No. 4116
          555 Fourth Street, N.W.
          Washington, D.C. 20530
          (202) 514-7063


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of this pleading has been served and filed this 16th day of July, 2007, to counsel for Defendant David, A. Eduardo Balarezo, Esquire, by electronic filing at filings@balarezo.net .


_____
MARTIN DEE CARPENTER, Bar No. 431-211
Assistant United States Attorney
Organized Crime & Narcotics Trafficking Section
555 4th Street, N.W., Room No. 4116
Washington, D.C.  20530
(202) 514-7063

Email: martin.carpenter2@usdoj.gov